IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BRITTANI CHRISTINE ZARATE, | Case No. 3:16-cv-02275-JR |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| NANCY A. BERRYHILL, COMMISSIONER of SOCIAL SECURITY, | |
| Defendant. | |

RUSSO, Magistrate Judge:

    Plaintiff, Brittani Zarate, ("plaintiff") brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income ("SSI") and Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision should be affirmed.

Page 1 – FINDING AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On November 27, 2012, plaintiff applied for SSI and DIB, alleging disability beginning November 26, 2012. Tr. 238, 240. Her application was denied initially and upon reconsideration. Tr. 103, 113, 128, 143. On November 12, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 61. Plaintiff was represented by counsel and testified. Tr. 61-94. On May 14, 2015, a second hearing was held before the ALJ. Tr. 43. Plaintiff testified as did a vocational expert. Tr. 43-60. On June 9, 2015, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 12-31. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## STATEMENT OF FACTS

Born on March 15, 1989, plaintiff was 23 years old on the alleged onset date, 25 years old at the time of the first hearing, and 26 at the time of the second hearing. Tr. 43, 65. Plaintiff graduated high school two years late with a 3.7 grade point average. Tr. 65, 66. Plaintiff worked part time as a barista at Kandi's Koffee for six years. Tr. 66, 67, 70. She alleges disability due to migraines, panic attacks, a heart condition, leaking heart valve, panic disorder, depression, and scoliosis. Tr. 106, 116.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh both the evidence that supports and detracts from the

[Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner evaluates whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can perform past work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At

step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

### THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since November 26, 2012, the alleged onset date. Tr. 14. At step two, the ALJ determined the following severe impairments: "migraine headaches, panic disorder, and dysthymic disorder." Tr. 15. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate whether the plaintiff's impairments affected her ability to work. Tr. 21. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [S]he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for six hours in an eight hour workday. She has no specific sitting limitations. She can occasionally climb ramps and stairs, but she can do no other climbing. She must avoid moderate exposure to hazards, i.e. unprotected heights and dangerous machinery with moving parts. She must also avoid concentrated exposure to vibration. She can have infrequent public contact. She can sustain concentration, persistence and pace for simple, routine, repetitive tasks and occasionally more complex tasks. However, she cannot sustain employment of a more complex nature.

Id.

At step four, the ALJ concluded plaintiff was unable to perform any past relevant work. Tr. 28. At step five, the ALJ found plaintiff could perform a significant number of jobs in the national economy, such as marker, folder, and assembler. Tr. 29-30.

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) affording less weight to the opinion of consulting examiner Dr. Jeffrey Sher, Psy.D.; and (3) limiting questioning of plaintiff at the second hearing.

**I.      Plaintiff's Testimony**

Plaintiff contends the ALJ wrongfully discredited her subjective symptom testimony because his finding was not supported by substantial evidence and was, in part, based on mistake of fact. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (internal citation omitted). The reason proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining the individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's findings regarding the claimant's subjective testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v.

Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). Additionally, this Court generally need not address all the reasons provided by the ALJ if at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . it is whether the ALJ's decision remains legally valid, despite such error." Id. at 1162.

Plaintiff alleges that she could not perform any work related tasks at a substantial gainful activity (SGA) level because of migraine headaches, a leaking heart valve, scoliosis, depression, and a panic disorder. Tr. 280. She wrote, "I am in so much pain from chronic daily migraines and scoliosis that it makes . . . daily living impossible." Tr. 293. In addition plaintiff remarked that she suffers from dizziness due to panic attacks which limit her ability to stand, and her heart condition restricts the amount of weight she can lift. Id. After summarizing the record, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, however, "[plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Tr. 26.

Here, the ALJ found plaintiff's alleged functional limitations inconsistent with the objective medical evidence. Tr. 26. Substantial evidence supports the ALJ's conclusion. When making a credibility evaluation, it is appropriate for the ALJ to consider objective medical evidence. Smolen, 80 F.3d at 1284. In February 2013, treating pain management specialist Robert Tilley, M.D., opined that he found no evidence to support plaintiff's difficulty with "sitting, standing, walking, lifting, carrying, fine or gross motor manipulation." Tr. 24, 438. Additionally, he found plaintiff presented no signs indicating that she was unable to perform work related mental activities such as understanding, memory, and concentrating. Tr. 24, 438-

439. Similarly, in April 2013, neurologist Cara Lee Rozell, D.O., stated "[plaintiff's] demeanor is not entirely consistent with most patients who describe the degree of pain with the frequency she describes." Tr. 27, 479. Dr. Rozell again noted, in July 2017, that plaintiff's demeanor was not consistent with the degree of pain alleged. Tr. 28, 663.

The ALJ also took issue with plaintiff's medication use. Tr. 23-24, 27-28. In April 2013, Dr. Rozell discontinued plaintiff's Fiorinal prescription because she requested a premature refill. Tr. 22, 449. Around May 2013, Western Psychological and Counseling Services P.C. (WPCS) refused to continue plaintiff's medication management when a pharmacy informed them plaintiff had altered her Xanax prescription from 14 pills to 19 pills. Tr. 23, 634. On May 16, 2013, after just a few weeks into treatment, WPCS terminated plaintiff's counseling due to noncompliance with her treatment plan, contract and/or WPCS policies. Tr. 23, 552. On May 30, 2013, plaintiff sought treatment from Brandon Cornejo, M.D. Tr. 23, 633, 639. Plaintiff specifically requested a prescription for benzodiazepines; however, Dr. Cornejo declined this request due to plaintiff's history of forging prescriptions. Id. Less than a month after plaintiff saw Dr. Cornejo, she sought treatment elsewhere citing the "feeling" that Dr. Cornejo "wasn't listening to her." Tr. 23, 652. In June 2013, Julia Rothgery, M.D., informed plaintiff that she was concerned about rebound headaches and discussed limiting plaintiff's medications. Tr. 23-24, 653. Dr. Rothgery noted, "[plaintiff] seems receptive to limiting though is reluctant to decrease as she likes having medications to take." Id. On multiple occasions plaintiff's urinalysis test results were missing the prescribed medication. Tr. 23, 628-629. The following evidence: request for early medication refills; alteration of a prescription; request for benzodiazepines and change in providers when that request was refused; reluctance to limit medications when her doctor believed it might reduce headaches; and urinalysis results indicating missing medications all provide substantial

evidence in support of the ALJ's finding that plaintiff's use of medication undermined the credibility of her subjective symptom testimony.[1] See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (a claimant's drug misuse is a clear and convincing reason to discount the claimant's testimony).

The ALJ noted a number of other inconsistencies to support his credibility finding as follows: the inconsistency between plaintiff's testimony and the medical record regarding the improvement of her depression; the variety of different reasons she provided to doctors and the ALJ explaining why she quit her job; the contradiction between her reported daily activities and her alleged debilitating symptoms; and finally, evidence plaintiff searched for work after her alleged onset date. Tr. 26-28, 67-68, 70, 74-76, 293, 297, 548-49, 636, 656, 689, 759, 765, 816, 818. These are clear and convincing reasons, supported by the record, for rejecting plaintiff's subjective symptom testimony. Smolen, 80 F.3d at 1284.

Plaintiff argues the ALJ misconstrued testimony relating to why she left her job, however, the ALJ's finding of inconsistencies regarding plaintiff's decision to leave her job is supported by multiple sources in the record beyond plaintiff's own testimony.[2] Plaintiff also contends the ALJ made a mistake of fact by stating that her employer wanted her to work four 12 hour shifts when she was only asked to work two 12 hour shifts. Tr. 25. The discrepancy in the shift number is a harmless error because the significance of the finding was that plaintiff could

---

[1] Plaintiff asserts the ALJ mischaracterized the medical record by stating plaintiff did not receive the type of medical treatment one would expect for a totally disabled person. Pl.'s Op. Br. 10. The Commissioner conceded the ALJ did not fully explain the basis for this finding, however, this Court finds the statement is harmless error in light of the other reasons, supported by the record, provided by the ALJ in making his credibility finding. Def.'s Rsp. Br. 11. Thus, the decision remains legally valid in light of the error. Carmickle, 533 F.3d at 1162.

[2] Plaintiff told the ALJ at the first hearing she quit because her employer wanted her to work 12 hour shifts, she told a doctor and nurse practitioner she quit due to conflicts with her boss, she told another doctor and a neurologist she quit due to her migraines, and finally she told a psychologist she quit on account of her panic attacks. Tr. 67, 636, 656, 689, 759, 816.

Page 8 – FINDING AND RECOMMENDATION

not work a single 12 hour shift, and this was not affected by the number of 12 hour shifts she was ultimately asked to work.

Plaintiff further contends the ALJ made a mistake of fact by not acknowledging that plaintiff had difficulty performing daily activities. Tr. 19. However, an ALJ may consider daily activities when discrediting a claimant's testimony, even when the activities suggest a claimant has some difficulty functioning, to the extent they contradict claims of totally debilitating impairment. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). Additionally, even if plaintiff's daily activities may not be a clear and convincing reason to discount plaintiff's credibility, the ALJ provided many other reasons, such as inconsistencies with the medical record, plaintiff's use of medication, and conflict between plaintiff's testimony and the record regarding whether her depression improved to discredit plaintiff. Because the reasons are supported by substantial evidence, this Court "may not engage in second-guessing." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citation and quotation omitted). Therefore, the ALJ did not err in discounting plaintiff's credibility.

## II.  Opinion of Consulting Examiner Dr. Sher

Plaintiff argues the ALJ improperly weighed the opinion of consulting examiner, Jeffery Sher, Psy.D., regarding his opinion of plaintiff's ability to interact with the public and respond appropriately in some work situations. Dr. Sher completed a questionnaire regarding plaintiff's ability to perform work related activities in which he opined that plaintiff has marked limitations when interacting with the public and marked limitations in responding appropriately to usual work situations and changes in routine work settings. Tr. 813-14. The ALJ gave partial weight to the opined limitation regarding interacting with the public and little weight to the opined limitation regarding responding appropriately to work situations. Tr. 25.

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present a clear and convincing reason supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating [his] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If the treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by a specific and legitimate reason. Id.

The ALJ provided clear and convincing reasons for rejecting Dr. Sher's opinion that are supported by the entire record. The ALJ stated that Dr. Sher "accepted much of the claimant's self-reports at face value" and was therefore undermined by the ALJ's finding that plaintiff was not credible. An ALJ may reject an examining physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. Dr. Sher's report did not document any abnormalities that supported marked limitations. Tr. 816-23. Dr. Sher described plaintiff as "cooperative and easy to interview once she became comfortable with the evaluation process" and he noted plaintiff's "interpersonal skills seem fair, maintaining appropriate eye contact though having a rather dour bearing." Tr. 818-19. While Dr. Sher indicated "panic attacks seem to be the central issue for her in work settings," he did not observe any panic attacks or note any signs of anxiety. Tr. 814, 818-19. However, plaintiff reported to Dr. Sher she left her job as a barista because "she was having panic attacks on a daily basis, which made it very hard to deal with the public." Tr. 816. As noted above, elsewhere in the record she reports a multitude of other reasons for quitting her job, the primary reason presented to the ALJ at the hearing was her inability to work a 12 hour shift. Tr. 27, 67-77, 636, 656, 689, 759. Thus, the ALJ's adverse credibility determination supports the limited rejection of Dr.

Sher's opinion because it was based primarily on plaintiff's subjective comments concerning her condition.

Further, the ALJ found that Dr. Sher's opined limitations were inconsistent with plaintiff's work history. Tr. 25. Plaintiff worked as a barista for six years with her alleged debilitating symptoms. Tr. 66-70. In this position, she made espresso drinks for customers and trained and supervised an employee. Tr. 291. Therefore, despite any limitations plaintiff may possess, she was able to maintain a customer service position for six years and was only forced to quit her job when her employer required her to work a 12 hour shift. Tr. 66-70. The incongruity between the limitations Dr. Sher opined and plaintiff's work history provides an additional clear and convincing reason for rejecting Dr. Sher's opinion of plaintiff's limitations.

### III.  Questioning at Second Hearing

Plaintiff argues the ALJ failed to satisfy his duty to conduct a full and fair hearing by prematurely ending plaintiff's testimony. An ALJ has a "special duty to develop the record fully and fairly and to ensure that the claimants interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted). Nevertheless, the ALJ's duty to further develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Id. at 459-60 (citation omitted). The ALJ may "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimants physicians, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted).

Here, the plaintiff contends the ALJ failed to give plaintiff a full and fair hearing by limiting her testimony at the second hearing. The testimony in question regarded plaintiff's past

Page 11 – FINDING AND RECOMMENDATION

work experience as a barista. Plaintiff asserts the failure to consider additional testimony from her on this subject resulted in the ALJ improperly considering her work as a barista as past relevant work. However, this consideration was harmless since the ALJ did not find plaintiff could perform her past work at step 4. Tr. 28-30; Pl.'s Op. Br. 14-15.

Plaintiff also argues that by limiting plaintiff's testimony at the second hearing, the ALJ failed to fully develop the record. Nevertheless, allowing submission of written testimony after a hearing can ensure that due process rights are not violated. See Frampton v. Astrue, 405 F. App'x 112, 113 (9th Cir. 2010). Plaintiff asserts she was prevented from testifying about past relevant work, her performance, and any accommodations that were made on her behalf. Pl.'s Op. Br. 15-16. Nevertheless, plaintiff testified about her past employment at length in the first hearing. Tr. 66-70, 92. She then provided additional testimony on her past employment in the second hearing, and submitted a written statement to the ALJ prior to the ALJ issuing a decision. Tr. 51-53, 370. Moreover, almost everything in the written statement was already included elsewhere in the record. Tr. 52, 67, 68, 70, 370, 816. Therefore, the ALJ's duties to fully and fairly develop the record were satisfied.

## RECOMMENDATION

For the reasons stated above, the Commissioner's decision should be affirmed and this case should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the

parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 20th day of December 2017.

 s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge